ELIAS *v.* HESS.

1. TRIAL—REQUEST TO CHARGE.
    A trial court need not give a request to charge which is not an accurate statement of the law on a particular issue.

2. NEGLIGENCE—PROXIMATE   CAUSE—INSTRUCTIONS—DISMOUNTING FROM HORSE.
    In action for damages arising from broken leg received by plaintiff, an inexperienced rider, during unassisted dismounting from horse at defendants' dude ranch where she was a paying guest, trial court's instruction as to proximate cause and which embraced defendants' alleged negligence and the possibility of a mere accident not reasonably foreseeable by either plaintiff or defendants *held,* not to have misled jury as to matter of proximate cause and to have amply covered plaintiff's theory of the case.

3. APPEAL AND ERROR—REQUEST TO CHARGE—INSTRUCTIONS.
    Failure to give request to charge is not error, where request is not an accurate statement of the law on a particular issue and charge, as given, amply covered theory of case of complaining party.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  53 Am Jur, Trial, § 525.
[3]  3 Am Jur, Appeal and Error, § 1128; 53 Am Jur, Trial, § 527.
[4]  2 Am Jur, Animals, § 82.
[5]  38 Am Jur, Negligence, §§ 171–173.
[6]  15 Am Jur, Damages, § 87.

4. ANIMALS—DUDE RANCH—HORSES—OWNERS' KNOWLEDGE OF VI-
    CIOUSNESS.
    Instruction that there was no testimony that defendant dude-
        ranch owners had any knowledge that their horse was vicious
        or that it would kick or move under certain circumstances,
        while unnecessary, did not constitute reversible error in
        rider's action for injuries received as she dismounted, where
        defendants offered testimony that they had no knowledge that
        the horse would kick or move under certain circumstances
        and such evidence was not traversed.

5. SAME—NEGLIGENCE—ASSUMPTION OF RISK.
    Instruction, that horseback riders must assume risk of acci-
        dents to themselves if an accident happens which the owner
        or provider of the horse could not reasonably have antici-
        pated might happen and if such an accident does happen
        the owner is not responsible therefor, was not error in action
        by inexperienced rider for injuries incident to her first un-
        assisted dismounting from horse where plaintiff neither al-
        leged nor argued to jury any negligence in regard to the
        horse and admitted it was gentle.

6. DAMAGES—SUBSEQUENT INJURIES—REQUEST TO CHARGE—INSTRUC-
    TIONS.
    Failure to give request to charge as to damages that jury .
        was to bring in separate determinations of damages for in-
        jury plaintiff sustained in original fall from horse and for
        a second fall she sustained over 10 months later and giving
        of instruction to jury that plaintiff was not entitled to
        damages for second injury was not error where jury deter-
        mined plaintiff not entitled to damages for first injury and
        court had permitted recovery for pain and suffering in event
        jury found liability on part of defendants.

Appeal from Superior Court for City of Grand
Rapids; Taylor (Thaddeus B.), J. Submitted Janu-
ary 10, 1950. (Docket No. 30, Calendar No. 44,655.)
Decided April 3, 1950.

Case by Anna Elias against John Hess and an-
other for personal injuries sustained when she fell
off a horse. Verdict and judgment for defendants.
Plaintiff appeals. Affirmed.

*William S. Wilson* and *Francis L. Williams,* for plaintiff.

*Allaben, Wiarda, Hayes & Hewitt,* for defendants.

SHARPE, J.  This is an action for damages for injuries suffered by plaintiff falling off of a horse. Plaintiff at the time of her injury was the owner and operator of a beauty parlor in the city of Grand Rapids.  Defendants are the owners and operators of a dude ranch near Hesperia, Michigan.  The dude ranch offered several recreational facilities including swimming, horseback riding and shuffleboard.

On July 6, 1947, plaintiff became a paying guest at the ranch.  She had never ridden a horse before and on the morning of July 7th, after some instructions, went for her first horseback ride.  She rode again that afternoon and the next day.  On each of these rides she was assisted in mounting and dismounting. At the end of her ride on July 9, 1947, and while the horse was standing in the corral, plaintiff asked for assistance in dismounting.  After waiting 4 or 5 minutes for assistance, she attempted to dismount. While in the act of dismounting by herself, the horse made a sudden movement, plaintiff lost her balance and fell to the ground.  She suffered a fracture of the tibia near the knee.  She was hospitalized and left the hospital some 2 weeks later after the break had been reduced and placed in a cast.  In May, 1948, plaintiff, while descending the steps of her home, fell and sustained a second fracture approximately 2 inches above the first fracture and above the knee.

A trial was had and at the close of plaintiff's case, defendants made a motion for a directed verdict as follows:

"I do not think there has been any negligence shown here which could in any manner be said to

have contributed to the accident to the plaintiff. If, as a matter of fact there is evidence there might be some negligence which would be a question for the jury, still the plaintiff by her own testimony has failed to prove freedom from contributory negligence as a matter of law, and the third and most fundamental ground relates to the question of proximate cause and what we call intervening cause."

The trial court reserved decision on the motion under the Empson act [*] and submitted the case to the jury who returned a verdict in favor of defendants. Following the entry of judgment, plaintiff made a motion for a new trial which was denied.

The record shows that on the morning of the accident plaintiff was given help in mounting the horse. The riding party consisted of John Hess, Jr.; plaintiff, Anna Elias; Violet Anderson; and Frances Duesendang. As the party returned from the ride, John Hess, Jr., rode down to the stables and dismounted; Frances Duesendang and Violet Anderson dismounted. Frances Duesendang went to get her camera when she heard plaintiff call. When Frances Duesendang returned, she saw plaintiff lying on her back near the head of the horse. The only facts in dispute that the jury had for consideration were whether plaintiff called for help and how long she waited before attempting to dismount herself and whether the instructor was talking to the stable boy.

Plaintiff alleges error in the failure of the trial court to give the following instruction:

"It is possible to have more than one proximate cause to an accident, but in order to be proximate causes each must be necessary in the happening of the accident. Now I instruct you that from a consideration of all the evidence in this case you may conclude that both the movement of the horse and

[*] CL 1948, § 691.691 et seq. (Stat Ann and Stat Ann 1949 Cum Supp § 27.1461 et seq.).—Reporter.

the failure of the riding instructor to do his duty were proximate causes, and if you should so find, then you should bring in a verdict for plaintiff."

It is plaintiff's claim that there were 2 proximate causes for the happening of the accident, *i. e.*, the sudden movement of the horse and the failure of the riding instructor to come when she called for aid in dismounting; and that it is not necessary to show that both proximate causes were due to the negligence of defendants.

In stating the claim of plaintiff, the court said:

"It is her claim that these injuries were sustained by reason of the failure and of the negligence on the one hand of the young man to come to her aid and to assist her to dismount and on the other hand by reason of the sudden movement of the horse."

In defining proximate cause the trial court instructed the jury as follows:

"Proximate cause is one which in the natural sequence undisturbed by any independent cause produces the result complained of. Now was the proximate cause of the injury the fact this horse moved or kicked, or was the proximate cause that she got off from the horse in such manner or in such way that she accidentally fell? If this was a misadventure, a mere accident, which neither the plaintiff nor the defendants could have reasonably foreseen, and the defendants exercised reasonable care to prevent it, in such case they are not liable.

"If you should find that the negligent act, if there was a negligent act, of the defendants, a failure to exercise due care for the safety of this woman, that this was *the proximate cause* or *a proximate cause* of the injury which resulted, then of course the plaintiff would be entitled to recover if you are so satisfied by a preponderance of the evidence. By this rule of proximate cause is meant that in order that the plaintiff may recover it must appear from the evidence in

the case that the injury sustained was the natural and probable consequence of the alleged negligent acts or omissions to act of the defendant, which under the circumstances an ordinarily careful and prudent person ought to have reasonably foreseen and anticipated might have occurred as a result of such act or omission to act, and in this case, of course, the claim of proximate cause or one of the proximate causes was the omission of the defendant's son to act and render assistance." (Italics supplied.)

It is to be noted that the trial court instructed the jury in terms of both *the proximate cause* and also in terms of *a proximate cause.*

The charge requested by plaintiff overlooks the question of plaintiff's contributory negligence, if any, in getting off the horse. A trial court need not give a request to charge which is not an accurate statement of the law on a particular issue. See *Moss* v. *Shreve,* 278 Mich 665. In our opinion the jury was not misled by the court's instruction on proximate cause. The instructions given amply covered plaintiff's theory of the case.

It is also urged that the trial court was in error in giving the following charge in that it prejudiced plaintiff by introducing an issue irrelevant to the case and had the effect of confusing the jury.

"Now I will say something else to you: So far as this case is concerned, and the movement of this horse, the defendants would not be responsible for any movement of the horse unless previously thereto, or the kicking of the horse, they had some knowledge or information that this horse was a vicious horse or a horse that was liable to kick or move under certain circumstances, and of course up to the present time there is no testimony in this case that the defendants had any such knowledge."

The record shows that defendants offered testimony to the effect that defendants did not have any

knowledge or information that the horse was liable to kick or move under certain circumstances. This evidence was not traversed by plaintiff. It was unnecessary for the court to give the instruction, but we do not think it had the effect of confusing the jury. It is not of sufficient importance to warrant the granting of a new trial.

Plaintiff also urges that the following charge given by the trial court was prejudicial:

"In horseback riding there are certain incidents related thereto that one who goes out and indulges in this pleasure must assume the risk of accident themselves, if an accident happens which it cannot be said the owner or provider of the horse could have reasonably anticipated might happen, and if an accident does happen, then the owner is not responsible for such accident or what happened in this case."

In view of the fact that plaintiff neither in her declaration nor argument to the jury made any allegation of negligence in regard to the horse and admits that it was gentle, we find no error in the charge.

Plaintiff also claims error in the failure of the trial court to give the following instruction:

"In the event that you find the defendants guilty of negligence and you then proceed to determine the damages in this case, I instruct you to bring in two separate determinations of damages. First, for the damages caused by plaintiff's original fall, and one for plaintiff's second fall which occurred on or about May 17, 1948."

And in giving the following instruction:

"So far as this second injury is concerned, ladies and gentlemen of the jury, I will say to you that so far as this is concerned in this case you are not at liberty to award any damages whatsoever. It appears from the testimony in this case that at this time, the time of the second injury, she was acting

independently and voluntarily and that as a result of her conduct she was again injured. The injury that she had before was not re-injured, that is to say, it was not aggravated, a new and independent injury occurred and a new fracture occurred and the old fracture was not opened up again by this second fall, so I say to you, so far as that is concerned, for the second injury she would not be entitled to recover damages whatsoever so far as this case is concerned. * * *

"The damages that were sustained by the second injury were not damages that flow from the original injury because the original injury was not aggravated thereby. The second injury was the result of the voluntary conduct upon her part, a new and intervening cause, and was not the natural and expected result of the first injury, and that is the reason she can't recover for any damages that have been sustained by reason of that second injury."

It should be noted that the trial court gave the following instructions on the question of damages:

"If after considering all the testimony in this case you are satisfied by a preponderance of the evidence that the plaintiff has established that the defendants were guilty of negligence which was the proximate cause of her injury and that she is entitled to recover, there are certain elements you may consider: First, it has been established here I believe and you may take into consideration that her hospital and doctor bills amount to $1,268. In addition to that she would be entitled to recover damages for her pain and suffering at the time of the injury to the present time. Of course, damages that are given or awarded for pain and suffering is something that cannot be ascertained by an exact mathematical computation, and in awarding damages for pain and suffering the jury have to take into consideration all of the testimony bearing on that subject and use their best judgment and sound judgment and award such a sum as you feel that the plaintiff is reasonably entitled to. If

she is entitled to recover she would also be entitled to recover for her loss of wages from the time of the injury up to the present time. She claims I believe she earned approximately $30 a week. Now in addition to that she claims that it is reasonably certain that in the future she will continue to suffer pain and that in the future she will suffer loss in earnings. If you determine and find she is entitled to recover and find it is reasonably certain she will suffer pain in the future you have a right to award such damages as you feel she would be entitled to in that respect as well as to award damages for loss of earnings.

"In determining the value or damages awarded for loss of earnings, that is future loss, you determine that by determining what in your sound judgment you find is the loss in the first year hereafter and determine the present worth of that sum. Merely as an example, suppose you determine she should lose $100, you take that sum you determine she would lose and divide it by 1.05. By doing that you get the present worth of the future sum, the present worth of a sum that is due 1 year from now. If you find she would suffer damages for the second year you take the sum for the second year and divide that by 1.10, which is the present value of the sum that is due 2 years from now. For the third year you do the same and divide by 1.15, which is the present value of a sum due 3 years from now, and you will continue that process for as long as you feel and find it is reasonably certain she would continue to suffer loss of earnings, fixing the amount for each year in the future, not to extend of course beyond the period of her natural expectancy of life, and in that regard this is the table which has been prepared and which has been determined that a person of average health, a person of the age of this woman, can be reasonably expected to live. It does not mean she will live that long, or that she will live longer than that. It is offered to you merely as a guide to be used in determining how many years you feel that you would award future damages for. The amounts you might

award for pain and suffering are determined in the same manner, future damages for pain and suffering, as I have stated, you take the sum you would award and for the first year divide by 1.05, the second year by 1.10, and so on for the number of years that you feel she would be entitled to recover."

The verdict of the jury in favor of defendants was an adjudication that defendants were not liable for the first injury, hence it follows that there can be no liability for the second injury. See *Baldwin* v. *Nall,* 323 Mich 25.

The judgment of the circuit court is affirmed, with costs to defendants.

REID, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred with SHARPE, J. BOYLES, C. J., concurred in the result.